UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**MARK V. LEMIEUX and**                        Chapter 13
**SANDRA M. LEMIEUX,**                         Case No. 05-30217-JNF
    Debtors

~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

### I. INTRODUCTION

    Several matters are before the Court: the Motion of Margaret E. Davis-Mullen, Trustee of Pastel Realty Trust, for Relief from the Automatic Stay, and the Opposition to the Motion filed by the Debtors, Mark and Sandra Lemieux (the "Debtors");[1] and the Objection of Margaret E. Davis-Mullen, Trustee of Pastel Realty Trust, to Debtors' Chapter 13 Plan, and the Debtors' Opposition to the Objection. The Court heard the matters on June 15, 2006 and took them under advisement. Among the issues presented is one of first impression, namely whether the Debtors' proposed Chapter 13 plan which provides for periodic plan payments to Margaret E. Davis-Mullen, Trustee of Pastel Realty Trust ("Davis-Mullen") is unconfirmable because it violates the provisions of 11 U.S.C. § 1325(a)(5)(B)(iii)(I), which requires payments in equal monthly amounts, if the debtor proposes to distribute property to a secured creditor in the form of periodic payments.

---

    [1] Davis-Mullen filed a "Notice of 30 Day Waiver of Hearing" with respect to the requirements of 11 U.S.C. § 362(e) on May 23, 2006.

1

## II. FACTUAL BACKGROUND

The Debtors filed a voluntary Chapter 13 petition on December 14, 2005. As represented in open court, the Debtors are divorced and Mrs. Lemieux lives at 35 Irving Drive, Walpole, Massachusetts (the "property") with the couple's four children.

On January 19, 2006, the Debtors filed their Schedules and Statement of Financial Affairs. On Schedule A-Real Property, the Debtors listed an ownership interest in the property which they valued at $420,000 pursuant to a "recent appraisal." On Schedule D-Creditors Holding Secured Claims, the Debtors listed creditors with claims against the property, including Countrywide Loan, the holder of a first mortgage in the sum of $220,000, and "William Mullen, Atlantic Title, as the holder of second and third mortgages in the sums of $42,000 and $35,000, respectively.[2] On Schedule E-Creditors Holding Unsecured Priority Claims, the Debtors listed the Commonwealth of Massachusetts as the holder of a claim arising from non-payment of meals taxes associated with Arbed Sports Pub, Inc., which they estimated at $15,000, and, on Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtors listed credit card and miscellaneous other debt totaling $35,866.

The Debtors filed a Chapter 13 plan on January 19, 2006 to which Davis-Mullen and the Chapter 13 Trustee objected. On March 30, 2006, the Court sustained Davis-Mullen's

---

[2] On Schedule B, the Debtors disclosed unliquidated claims arising from a "possible negligence suit" against William Mullen. The Debtors do not dispute that Davis-Mullen is the legitimate holder by way of assignments of valid mortgages encumbering the Walpole property.

2

Objection to their first plan and ordered the Debtors to file an amended plan. On May 12, 2006, the Debtors filed a First Amended Pre-Confirmation Plan. Four days later, Davis-Mullen file her Motion for Relief from the Automatic Stay.

The Debtors propose a 36 month plan with monthly plan payments of $1,081. They intend to pay their first mortgage directly and to pay Davis-Mullen's mortgages, including arrears, in the sums of $62,147 and $41,772, as well as a tax claim owed to the Massachusetts Department of Revenue and an administrative expense claim owed to their attorney. Their income is insufficient to permit the payment of a dividend to the holders of unsecured debt. They explain how they intend to implement their plan as follows:

> Debtors to pay $1,081 per month for 35 months = $37,835 and a balloon payment of $95,853 on or about the 36th month. This balloon payment will come from a refinancing for $95,853 above the first mortgage (less any contribution made by William Capone towards the third mortgage - he is the actual borrower on the third mortgage), towards the third mortgage. This contribution expected to be no less than $18,000.

Davis-Mullen objected to the Debtors' First Amended Pre-Confirmation Plan. In her pleadings, she disclosed that she holds a mortgage by assignment, dated October 2, 2003, which secures a note of even date in the original principal amount of $55,000 and which is payable on October 2, 2006, as well as a $35,313.86 mortgage with the same date and terms securing a guaranty of a note executed by William Capone. That note also matures in October 2006. Monthly payments under the $55,000 note are $1,774.70.

Davis-Mullen objected "to any repayment beyond the agreed repayment period of October 2006." Additionally, she objected to repayment through the Debtors' plan, as well as to the amount of the monthly plan payment, which she asserted is less than the amount

3

payable under the note secured by the second mortgage.

In her Motion for Relief from the Automatic Stay, Davis-Mullen alleged that the property is the only collateral securing the mortgages and that the Debtors have made no payments on the notes and are in default of their obligations under the terms of the loan documents. She further alleged that the encumbrances on the property total $323,917.86 including sums due under the first mortgage and that she had obtained an appraisal from R.J. Hadge Appraisal, Inc. According to Davis-Mullen, the Hadge appraisal sets forth a fair market value of $365,000 as of April 13, 2005. Moreover, she asserted that the property has a liquidation value of $255,000. In her view, the value of her position is eroding daily due to the accumulation of interest, attorneys' fees and other expenses. Moreover, she asserted that there is no likelihood that the Debtors can reorganize within a reasonable time. In short, she maintains that she has established cause for relief from stay under 11 U.S.C. § 362(d)(1) and that she has established grounds for relief from stay under 11 U.S.C. § 362(d)(2).

The Debtors objected to Davis-Mullen's Motion for Relief from the Automatic Stay. Specifically, they challenged her appraisal as outdated. They also asserted that the value of the property is not eroding because of payments being made to the Chapter 13 trustee and that a reorganization is in prospect.

At the June 15, 2006 hearing, Davis-Mullen advanced the argument that the Debtors' monthly plan payments were not in equal monthly amounts because of the balloon payment provision. The Court granted the parties an opportunity to brief the issue of

4

whether balloon payments are permissible under 11 U.S.C. § 1325(a)(5)(B)(iii)(I).

## III. DISCUSSION

A. <u>Davis-Mullen's Objection to Confirmation of the First Amended Plan</u>

An analysis of the issues must begin with section 1322(b)(2). That section provides that " [s]ubject to subsections (a) and (c), the plan may . . . (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2). Notwithstanding subsection 1322(b)(2), however, the Bankruptcy Code provides that the plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5). The Debtors do not propose to "cure and maintain" with respect to Davis-Mullen's secured claims. Instead, they are proceeding under subsection (c), which creates an exception to § 1322(b)(2) for short term obligations. It provides:

> Notwithstanding subsection (b)(2) and applicable nonbankruptcy law- . . .
>
> (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

11 U.S.C. § 1322(c)(2). Section 1325(a)(5), in turn, provides the following with respect to the allowable treatment of secured claims:

5

> (5) with respect to each allowed secured claim provided for by the plan--
>
>> (A) the holder of such claim has accepted the plan;
>> (B)(i) the plan provides that--
>>> (I) the holder of such claim retain the lien securing such claim until the earlier of--
>>>> (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>>>> (bb) discharge under section 1328; and
>>> (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
>> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>> (iii) if--
>>> (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>>> (II) the holder of the claim is secured by *personal* property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
>> (C) the debtor surrenders the property securing such claim to such holder.

11 U.S.C. § 1325(a)(5)(emphasis added).

To the extent that Davis-Mullen objects to the Debtors' use of 11 U.S.C. §§ 1322(c) and 1325(a)(5) with respect to her secured claims, the Court overrules her objection. Because Davis-Mullen's mortgages are payable in October 2006 within the term of the Debtors' proposed plan, the Debtors may modify her secured claims if they satisfy the requirements of § 1325(a)(5)(B). With respect to her objection based on the Debtors'

6

proposed treatment of her secured claims under § 1325(a)(5)(B)(iii)(I), advanced at the June 15th hearing, the Court sustains her objection.

The Debtors propose to make regular monthly payments through their plan in the sum of $1,081. While that sum may be sufficient to provide adequate protection to Davis-Mullen under 11 U.S.C. § 361, the Debtors must make a balloon payment in the sum of $95,853 to satisfy Davis-Mullen's secured claims in order to comply with 11 U.S.C. §§ 1322(c) and 1325(a)(5) because the notes mature in October of 2006. The difficulty with the Debtors' proposed treatment of Davis-Mullen's secured claims is the requirement that payments be in equal monthly amounts because they are distributing property to Davis-Mullen in the form of periodic plan payments. The Debtors' plan does not contain provisions for distributions in equal monthly amounts.

The Court finds that the plain meaning of 11 U.S.C. § 1325(a)(5)(B)(iii)(I) precludes confirmation of the Debtors' Chapter 13 plan and requires this Court to sustain Davis-Mullen' objection. The Court finds support for its decision in In re Wagner, 342 B.R. 766 (Bankr. E.D. Tenn. 2006). In that case, the debtor filed an amended plan in which she proposed to make bi-weekly plan payments to the trustee of $420.00 for 60 months, plus the payment of all tax refunds in excess of $1,500.00. Additionally, she proposed to pay the holder of the mortgage on her real property monthly "maintenance installments" of $728.00 commencing in March 2006, and continuing for 23 months, with a balloon payment for the balance due in the 24th month. 342 B.R. at 769. The bankruptcy court refused to approve the debtor's proposed plan, observing the following:

7

> [U]nder the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), payments to secured creditors must be in equal amounts. "The language in amended section 1325(a) of [BAPCPA], ... which addresses the components necessary to confirm a plan, reinforces the importance of maintaining the creditor's lien rights. Unlike the previous section 1325, the new language seems to require that payments made after confirmation be in equal amounts and keep pace with depreciation during the term of the plan." Americredit Fin. Servs., Inc. v. Nichols (In re Nichols), 440 F.3d 850, 857 n. 6 (6th Cir. 2006); see also In re DeSardi, 340 B.R. 790, 804-05 (Bankr. S.D. Tex.2006) ("The Court understands [§ 1325(a)(5)(B)(iii)(I)] to require payments to be equal once they begin, and to continue to be equal until they cease."). Accordingly, in order to obtain confirmation, the Debtor's plan must provide for equal monthly payments to New Falls Corporation over the life of the plan until the lien claim is satisfied. Such treatment cannot then allow for a balloon payment in the final month, as proposed by the Debtor. Accordingly, the Debtor's April 18, 2006 Amended Plan is not confirmable under § 1325(a)(5)(B).

342 B.R. at 772 (footnote omitted).

The Debtors rely upon In re Davis, 343 B.R. 326 (Bankr. M.D. Fla. 2006), for the proposition that there is no requirement that payments be in equal monthly amounts and that balloon payments are permissible. That case, however, is distinguishable because the debtor was relying upon § 1322(b)(5) to cure and maintain payments on her mortgage on which the last payment was due after the date on which the final plan payment was due. The court in Davis concluded:

> Based upon the historical analysis of the interplay between Section 1322(b)(5) and Section 1325(a)(5) (under which Section 1325(a)(5)(B)(iii) falls), the Court finds that equal monthly payments are not required as the claim at issue is one in which arrears on *long term debt* are being cured. Thus, Creditor's claim falls outside the ambit of requirements contained under Section 1325(a)(5). As the Court has found Section 1325(a)(5)(B)(iii) to be inapplicable, there is no need for the Court to reach a determination as to the parameters of what qualifies as "equal monthly payments."

342 B.R. at 328 (emphasis supplied). Cf. In re Gillis, 333 B.R. 1 (Bankr. D. Mass. 2005).

This Court notes that the cases cited by the court in <u>Wagner</u> involved personal property. That distinction does not alter the outcome in this case, however, because § 1325(a)(5) governs claims secured by both real and personal property. Moreover, the Court rejects the Debtors' argument that this Court should construe the language used in § 1325(a)(5)(B)(iii)(I) to pertain to personal property only, and not real property, because of the explicit reference to personal property in § 1325(a)(5)(B)(iii)(II).

To obtain confirmation of a plan, a debtor must provide, pursuant to § 1325(a)(5)(B)(i) and (ii), that the secured creditor retain its lien and that the value of property to be distributed under the plan on account of the secured claim is not less that the allowed amount of the claim. Section 1325(a)(5)(B)(iii) sets forth the required treatment for allowed secured claims beginning with the word "if" followed by subsections (I) and (II) reproduced above. The word "if" precedes both subsection (I) and (II), which are thus independent of one another. Section 1325(a)(5)(B)(iii)(I) applies to real property, particularly as it is conceivable, for example, that a Chapter 13 debtor might have a mortgage on real property but not a lien or other encumbrance on personal property, while both subsections (I) and (II) apply to claims secured by personalty.

As stated in 8 *Collier on Bankruptcy* ¶ 1325.06[3][b][ii][A] at 1325-39 (15th ed. revised 2005), § 1325(a)(5)(B)(iii)(I) "refers to the distributions to the holder of the allowed secured claim and not to the debtor's plan payments." According to *Collier*, "[t]here does not seem to be any requirement that the equal monthly amounts extend throughout the plan," and it "does not preclude a plan providing for a single payment." <u>Id.</u> Although those precepts

9

may hold true, the Debtors have not tested them in this case. Rather, they have proposed a plan with unequal periodic payments that cannot be confirmed because of the plain language of the statute.

### B. The Motion for Relief from the Automatic Stay

Pursuant to 11 U.S.C. § 362(g), Davis-Mullen has the burden of proof on the Debtors' equity in their Walpole property. She attached an opinion of value in the sum of $365,000 based on an appraisal conducted in April of 2005. The Debtors maintain that their property is worth $420,000, a difference of $55,000. They valued the property based upon "a recent appraisal." They listed that value in their Schedules filed on January 19, 2006 and in their Chapter 13 plan filed on May 12, 2006. Accordingly, a dispute exists as to the value of the property and, concomitantly, the extent to which Davis-Mullen may be adequately protected by an equity cushion and the need for, and amount of, adequate protection payments.

### III. CONCLUSION

In view of the foregoing, the Court shall enter an order sustaining Davis-Mullen's objection to the Debtors' First Amended Pre-Confirmation Chapter 13 Plan and scheduling an evidentiary hearing on the Motion for Relief from the Automatic Stay.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: August 16, 2006
cc: Gary W. Cruickshank, Esq., John Ullian, Esq., Chapter 13 Trustee